

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7336 | **DATE** | 2/25/2004 |
| **CASE TITLE** | IVANHOE FINANCIAL, INC. vs. HIGHLAND BANC CORP., et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: Defendants' motion to dismiss Counts II and III of the complaint is denied. Status hearing set for March 10, 2004 at 10:45a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | FEB 26 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | 19 |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IVANHOE FINANCIAL, INC.,            )
a Delaware corporation,              )
                                     )
            Plaintiff,               )    No. 03 C 7336
                                     )    Paul E. Plunkett, Senior Judge
    v.                               )
                                     )
HIGHLAND BANC CORP, an               )
Illinois corporation and WIESLAW     )
DOMARADZKI,                          )
                                     )
            Defendants.              )

DOCKETED
FEB 2 6 2004

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued defendants for breach of contract (Count I), fraudulent misrepresentation (Count II) and negligent misrepresentation (Count III) for their alleged submission to plaintiff of false loan documents. The case is before the Court on defendants' Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss the claims in Counts II and III. For the reasons set forth below, the motion is denied.

### Facts

Plaintiff is a Delaware corporation with its principal place of business in Florida. (Compl. ¶ 1.) Defendant Highland Banc Corp is an Illinois corporation with its principal place of business

in Illinois. (Id. ¶ 2.) Highland is also a licensed Illinois mortgage broker. (Id.) Defendant Domaradzki is the president and an owner of Highland. (Id. ¶ 3.) Domaradzki controls, manages and operates Highland. (Id.)

On January 12, 2001, Domaradzki, on behalf of Highland, entered into a broker/lender agreement with plaintiff. (Id. ¶ 6.) The agreement required Highland to package and submit to plaintiff residential first or second mortgage applications for possible funding by plaintiff. (Id.) Among other things, the agreement made Highland responsible for the complete and accurate preparation of the loan applications. (Id. ¶ 7.) The agreement also required Highland to warrant that all documents it submitted in connection with each loan package were "valid and genuine" and all information provided was "complete, true and accurate." (Id. ¶ 9.) If Highland breached these terms on any loan, the agreement says, plaintiff could require it to repurchase that loan. (Id. ¶ 10.)

In the fall of 2002, defendants submitted loan packages to Ivanhoe for residential mortgage loans to Kamil Spicak and Myroslaw Ruptash, respectively. (Id. ¶¶ 11, 14.) Plaintiff, assuming the documents were accurate, issued a $646,220.00 loan to Spicak and a $301,950.00 loan to Ruptash. (Id. ¶¶ 12, 15.) Subsequent investigation revealed that both loan packages contained false information about the value of the property securing the mortgage and the borrower's earnings, which, in each case, were far less than stated. (Id. ¶¶ 12-13, 15-16.)

When plaintiff discovered the problems with the Spicak and Ruptash loans, it demanded that defendants repurchase them in accordance with the agreement. (Id. ¶¶ 17-18.) Defendants have yet to comply with that demand. (Id. ¶ 20.)

Plaintiff contends that defendants have breached the broker/lender agreement and are liable for fraudulent or negligent misrepresentation.

## Discussion

### Choice of Law

Before we turn to the allegations of the complaint, we must determine which law governs this suit. Federal courts sitting in diversity apply the choice of law rules of the forum state. Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1184 (7th Cir. 1996). One of Illinois' choice of law rules is that a contractual choice of law clause will be enforced as long as the contract is valid. Id. at 1185. The broker/lender agreement, which the parties agree is valid, contains the following provision: "This Agreement shall be governed by the laws of the State of Florida and any action which may be commenced in connection with this Agreement shall be instituted in the State of Florida." (See Defs.' Mot. Dismiss, Ex. B ¶ 13.)[1] Before we can enforce that provision, however, we must determine what it means.

Plaintiff urges a narrow construction, contending that the clause applies only to claims grounded in contract. Defendants, of course, disagree, and argue that the clause applies to all claims based on or related to the contract. Whatever else the clause may mean, this much is undisputed: the clause governs the interpretation of contractual provisions. Thus, we must use Florida law to determine the scope of this provision.

In Florida, as in most places, contracts are construed "to give effect to the intent of the parties." Burns v. Barfield, 732 So. 2d 1202, 1205 (Fl. App. Ct. 1999). The best evidence of that intent is the language of the contract and "its plain meaning controls." Id. "Unless the document in question contains a glossary of terms requiring a different meaning . . . , to find the plain and

---

[1] To the extent the venue provision applies to this suit, the parties have waived it by litigating the case in this Court.

ordinary meaning of words, one looks to the dictionary." Winn-Dixie Stores, Inc. v. 99 Cent Stuff – Trail Plaza, LLC, 811 So. 2d 719, 722 (Fl. App. Ct. 2002). According to Webster's Dictionary, the term "agreement" means "a. A properly executed and legally binding compact. b. The writing or document embodying this compact." WEBSTER'S II NEW RIVERSIDE UNIVERSITY DICTIONARY 87 (1994). Plaintiff's tort claims are not encompassed by the parties' agreement, as that word is commonly understood. Cf. SAI Ins. Agency, Inc. v. Applied Sys., Inc., 858 So. 2d 401, 403 (Fla. App. Ct. 2003) (noting that the phrase "Agreement . . . shall be governed by, and interpreted in accordance with, the laws of the State of Illinois" did not mean that "the substantive law of Illinois will govern all disputes between the parties."). If the parties had intended the choice of law provision to cover claims beyond the four corners of the contract, they would have used more expansive language. See Seifert v. U.S. Home Corp., 750 So. 2d 633, 637 (Fla. 1999) (contract provisions that require arbitration of claims "under" or "arising out of" contract include only those claims that "relat[e] to the interpretation of the contract and [its] performance" while provisions that require arbitration of all claims "arising out of *or relating to* the contract . . . encompass virtually all disputes between the contracting parties, including related tort claims") (internal quotation marks and citations omitted) (emphasis added). Because the plain language of the choice of law provision indicates that it applies solely to disputes grounded in the agreement, plaintiff's tort claims are not governed by it.

Since the choice of law provision does not settle the question, we must determine which state's law applies to the tort claims. Of course, choice of law only matters if there are substantive differences between Florida and Illinois law. Plaintiff contends that there isn't.

-4-

The Court disagrees. Both Florida and Illinois adhere to the economic loss doctrine which, generally speaking, forbids parties to a contract from suing in tort to recover purely economic damages stemming from a contractual breach. See AFM Corp. v. Southern Bell Tel. & Tel. Co., 515 So. 2d 180, 181 (Fla. 1987); Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443, 450-52 (Ill. 1982). Both states also recognize exceptions to the doctrine, but the exceptions are quite different. Illinois' exception is quite broad, applying to all fraud claims and claims for negligent representation that are asserted against those in the business of supplying information to others for use in business transactions. Moorman, 435 N.E.2d at 452. Florida has a misrepresentation exception as well, but it is far narrower. In Florida, the economic loss doctrine does not bar claims for "intentional or negligent acts considered to be independent from [the] acts that breached the contract." HTP, Ltd. v. Lineas Aereas Costarricenses, S.A., 685 So. 2d 1238, 1239 (Fla. 1997). "In other words, [if] the actions that comprise[] the tort (i.e., the negligent or fraudulent misrepresentations) [are] separable or distinct from the . . . contractual relationship," then the economic loss doctrine does not apply. Premix-Marbletite Mfg. Corp. v. SKW Chem., Inc., 145 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001). If, however, "the actions complained of relate directly to the subject matter of the parties' agreement, or are interwoven with the agreement, no independent tort exists and the economic loss rule applies." Id.; see Allen v. Stephan Co., 784 So. 2d 456, 458 (Fla. App. Ct. 2000) (stating that economic loss rule applies if the alleged "misrepresentation [is] made in connection with the seller's performance").

In its tort claims, plaintiff alleges that defendants submitted false and inflated property appraisals and false borrower W-2s in connection with the Spicak and Ruptash loans. (Compl. ¶¶ 12-16, 26-27, 31-34.) That is exactly the same conduct that plaintiff says breached the parties' broker/lender agreement. (See id. ¶ 7 (alleging that broker/lender agreement made defendants

responsible for preparation of loan applications and submission of accurate borrower credit information and property appraisals); id. ¶ 9 (alleging that paragraph five of the agreement obligates defendants to warrant, among other things, that all documents it submits in connection with loan packages are accurate); ¶ 23 (alleging that defendants have breached paragraph five of the broker/lender agreement).) In other words, defendants' alleged misrepresentations were made in connection with their performance of the contract. Thus, they are not actionable in tort under Florida law, though they may be in Illinois. Because the laws of the two states actually conflict, we must to determine which law governs this case.

In the absence of an effective choice of law by the parties, Illinois courts use the Restatement's "most significant relationship test" for choice of law in tort cases. Esser v. McIntyre, 661 N.E.2d 1138, 1141 (Ill. 1996). That test requires us to evaluate the following factors to determine which law governs:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 (1971). Those factors are to be weighed, the Restatement says, "according to their relative importance with respect to the particular issue" and in accordance with the principles applicable to all choice of law decisions. Id.; see id. § 6 (listing the following as the relevant choice of law principles: "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of

-6-

law, (f) certainty, predictability and uniformity of result, and (g) ease in the determination and application of the law to be applied").)

As defendants note, Illinois courts generally accord the place of injury factor the greatest weight under this test. See, e.g., Esser, 661 N.E.2d at 1141. That place is Florida, defendants say, the state where plaintiff has its principal place of business. Plaintiff contends that "place of injury" means the place where the tort occurred, which it contends is Illinois because that is where defendants made the representations on which the tort claims are based.

Even if "place of injury" and "place tort occurred" are synonymous, as plaintiff contends, that place is Florida not Illinois. Though defendants made the allegedly false representations in Illinois, they only became actionable when plaintiff relied on them in making the loans. That reliance, and the resulting pecuniary loss, occurred in Florida. Thus, both the tort and the injury occurred in Florida.

But that conclusion does not end the choice of law analysis, as defendants urge. Though Illinois courts usually apply the law of the place of injury in personal injury tort cases, that factor is far less significant in fraud and misrepresentation cases:

> In the case of personal injuries or of injuries to tangible things, the place where the injury occurred is a contact that, as to most issues, plays an important role in the selection of the state of the applicable law . . . . This contact likewise plays an important role in the selection of the state of the applicable law in the case of other kinds of torts, provided that the injury occurred in a single, clearly ascertainable, state. . . .
>
> Situations do arise, however, where the place of injury will not play an important role in the selection of the state of the applicable law. . . . This will . . . be so when, such as in the case of fraud and misrepresentation . . . , there may be little reason . . . to say that one state rather than another is the place of injury . . . .

-7-

RESTATEMENT (SECOND) CONFLICT OF LAWS § 145 cmt. e (1971). Moreover, even in personal injury cases, Illinois courts will not apply the law of the place of injury if "Illinois has a more significant relationship with the occurrence and with the parties." Esser, 661 N.E.2d at 1141.

In this case, it does. The only connection that Florida has to this dispute is that plaintiff is located, and therefore, felt the injury, there. But the conduct that caused the injury occurred in Illinois, both defendants are citizens of Illinois, and the parties' relationship is centered here, where the loan applications were prepared and the borrowers and the property securing the loans are located. The fact that both the wrongdoing and the wrongdoers are located here gives Illinois a greater stake in this dispute than Florida. Illinois has a significant interest in regulating the conduct of its citizens and in assuring those who do business here that fraudulent business practices will not be tolerated, interests that are reflected in the State's broad fraud exception to the economic loss doctrine. Florida has an interest in this case too, that of adjudicating disputes that involve its citizens, but it is far less compelling, especially given the State's inability to provide plaintiff any redress in this case. Given Florida's tenuous connection to this dispute, applying Illinois law to it would neither offend principles of comity or the parties' justified expectations. In short, because Illinois has a far greater interest in plaintiff's tort claims than does Florida, Illinois law applies to those claims.

**Failure to State a Claim**

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Midwest Grinding Co. v. Spitz, 976 F.2d 1016, 1019 (7th Cir. 1992). No claim will be dismissed unless "it

is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

In Count II of the complaint, plaintiff charges defendants with fraudulent misrepresentation. To state such a claim, plaintiff must allege that: (1) defendants made a statement of material fact that they knew or believed to be false; (2) defendants intended to induce plaintiff to rely on the statement; (3) plaintiff acted in reasonable reliance on the truth of the statement and was damaged. Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor, 692 N.E.2d 812, 815 (Ill. App. Ct. 1998). The elements of the negligent misrepresentation claim asserted in Count III are similar: (1) defendants are in the business of supplying information for the guidance of others in their business dealings;[2] (2) they made a false statement of material fact to plaintiff for guidance in its business; (3) they were careless or negligent in ascertaining the truth of the statement; (4) they intended to induce plaintiff to act on the statement; (5) plaintiff acted in reasonable reliance on the truth of the statement and was damaged; and (6) defendants had a duty to communicate accurate information to plaintiff. Quinn v. McGraw-Hill Cos., 168 F.3d 331, 335 (7th Cir. 1999); Prime Leasing, Inc. v. Kendig, 773 N.E.2d 84, 94 (Ill. App. Ct. 2002). Defendants say that plaintiff has not alleged these claims with the particularity required by Rule 9(b). Thus, they say, both counts must be dismissed.[3]

---

[2]Contrary to defendants' assertion, their entire role under the contract was to supply plaintiff with information to enable it to determine whether to fund various loans. (See generally Defs.' Mot. Dismiss, Ex. B.) Because the supply of that information was the point of the parties' transaction rather than a by-product of it, plaintiff's negligent misrepresentation claim falls within the Moorman exception. Tolan & Son, Inc. v. KLLM Architects, Inc., 719 N.E.2d 288, 297 (Ill. App. Ct. 1999).

[3]Though Rule 9(b) unquestionably applies to the fraudulent misrepresentation claim, whether it applies to the negligent misrepresentation claim is less clear. Compare Benchmark Elec., Inc. v. J.M. Huber Corp, 343 F.3d 719, 723 (5th Cir. 2003) ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements

Rule 9(b) requires plaintiff to allege "the identity of the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Uni*Quality, Inc. v. Infotronx, Inc., 974 F.2d 918, 923 (7th Cir. 1992) (internal quotation marks and citation omitted). Defendants say that the first element, the identity of the person making the misrepresentation, is missing from plaintiff's complaint. (Defs.' Reply Mem. Law Supp. Mot. Dismiss at 10.)

The Court disagrees. Plaintiff alleges that: (1) the appraisals, which were purportedly prepared by Gregory Darling of Price-Rite Appraisal, Inc., and the borrowers' W-2s for the Ruptash and Spicak loans were false; (2) defendants knew that information was false or were negligent in ascertaining its truth; and (3) defendants nonetheless submitted that false information to plaintiff. (Id. ¶¶ 12-16, 27-28, 32-34.) As defendants point out, those allegations support the inference that the false information originated with the appraiser and the borrowers. But plaintiff alleges that defendants, not the appraiser and the borrowers, passed that information on to plaintiff, though they knew or should have known that it was false. Once defendants submitted that false information to plaintiff, the misrepresentations became theirs, even if the information originated with someone else.

Even if those allegations sufficiently state claims against Highland, defendants argue that they do not state viable claims against individual defendant Domaradzki. As defendants correctly

---

when the parties have not urged a separate focus on the negligent misrepresentation claims.") and Harsco Corp. v. Segui, 91 F.3d 337, 347-48 (2d Cir. 1996) (applying Rule 9(b) to negligent misrepresentation claim) with 5 CHARLES WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE, § 1297 at 615 (2d ed. 1990) ("[T]he particularity requirement in Rule 9(b) applies only to averments of fraud. Since the rule is a special pleading requirement and contrary to the general approach of simplified pleading adopted by the federal rules, its scope of application should be construed narrowly and not extended to other legal theories or defenses."). It is an issue we need not decide, however, as both of plaintiff's claims satisfy the Rule.

note, corporate officers are "not liable for the corporation's torts simply by virtue of [their] office." National Acceptance Co. of Am. v. Pintura Corp., 418 N.E.2d 1114, 1117 (Ill. App. Ct. 1981). A corporate officer can, however, be liable for corporate torts in which "he actively participates." Id. Construed liberally, the complaint adequately alleges that Domaradzki actively participated in Highland's torts.

According to the complaint, Domaradzki is the President and an owner of Highland, who "control[s], manage[s] and operate[s]" the company "on a daily basis" and knew the appraisals and W-2s for the Ruptash and Spicak loans were false. (Id. ¶¶ 3, 28, 34.) Taken together, those allegations support the inference that Domaradzki either directed or approved of Highland's submission of false information to plaintiff.

Finally, defendants contend that plaintiff's complaint is deficient because it does not set forth any facts that support the general allegation that defendants knew or should have known that information they submitted to plaintiff was false. Rule 9 does not require plaintiff to plead knowledge with particularity, but in the context of fraud claims, the Seventh Circuit has said, a complaint "must afford a basis for believing that plaintiff[] could prove scienter." DiLeo v. Ernst & Young, 901 F.2d 624, 629 (7th Cir. 1990).

Plaintiff's complaint satisfies this standard. Plaintiff alleges that the amounts listed on the W-2s defendants submitted for both the Spicak and Ruptash loans did not match the W-2 earnings listed on the tax returns for those borrowers. (Compl. ¶¶ 13, 16.) Defendants' alleged failure to compare the borrowers' W-2s to their actual tax returns, though the contract obligated them to verify each borrower's eligibility for the loan and to warrant the accuracy of information submitted, supports the inference that they acted negligently or with reckless disregard for the truth when they

submitted the Spicak and Ruptash loan applications to plaintiff. See Stewart v. Thrasher, 610 N.E.2d 799, 802 (Ill. App. Ct. 1993) (fraud "involves the making of a representation which the maker knows to be false, or is made with reckless disregard for its truth or falsity"). Defendants' motion to dismiss plaintiff's tort claims for failure to comply with Rule 9 is, therefore, denied.

## Conclusion

For the reasons set forth above, defendants' motion to dismiss Counts II and III of the complaint is denied.

**ENTER:**

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: 2-25-04