# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Paul E. Plunkett | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 7336 | **DATE** | 9/14/2004 |
| **CASE TITLE** | Ivanhoe Financial, Inc. vs. Highland Banc Corp., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 10/14/2004 at 11:00 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Enter Memorandum Opinion and Order. Ruling date on pending motions is stricken. Plaintiff's motions to strike affirmative defenses (33-1, 35-1) and to dismiss counterclaim (35-2) are granted in part and denied in part. Defendants' counterclaim is dismissed with prejudice. Defendants have until 9/28/04 to file amended affirmative defenses in accordance with this Order, if they can do so and remain in compliance with Rule 11.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 15 2004 | 51 |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 9/14/2004 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| CW | courtroom deputy's initials | Date/time received in central Clerk's Office | CW mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 15 2004

| | |
|---|---|
| IVANHOE FINANCIAL, INC., a Delaware corporation, | )<br>)<br>) |
| Plaintiff, | ) No. 03 C 7336<br>) Paul E. Plunkett, Senior Judge |
| v. | )<br>) |
| HIGHLAND BANC CORP, an Illinois corporation and WIESLAW DOMARADZKI, | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff has sued defendants under various theories for their alleged submission to plaintiff of fraudulent mortgage loan packages. The case is before the Court on plaintiff's combined motion to strike defendants' affirmative defenses and dismiss their counterclaim. For the reasons set forth below, the motion is granted in part and denied in part.

### Discussion[1]

### Motion to Dismiss Counterclaim

On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. Forseth v. Village of Sussex, 199 F.3d 363, 368 (7th Cir. 2000). No claim will be dismissed unless "it is clear that no

---

[1] The alleged facts of this case are set forth in the Court's February 25, 2004 Memorandum Opinion and Order denying defendants' motion to dismiss and will not be repeated here.

-1-

relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

In Count I of their counterclaim, defendants allege that plaintiff breached a duty it owed to them "to verify and investigate" the loan information they provided to it. (Countercl., Count I ¶¶ 23-24.) Plaintiff says those allegations are squarely contradicted by the parties' contract, and thus, this claim must be dismissed.

The Court agrees with plaintiff. The broker/lender agreement executed by the parties expressly vests defendants with responsibility for verifying and investigating loan information. The agreement states that defendants "shall be responsible for the accurate preparation and execution of a complete property and credit loan application package on each loan request submitted, including . . . [o]riginal appraisal of the subject property." (Defs.' Second Am. Answer, Affirmative Defenses & Countercl., Ex. A, Broker/Lender Agreement ¶ 1e.) It also requires defendants to "obtain[] an appraisal from an Ivanhoe approved appraiser . . . and . . . ensure that such appraisal is acceptable in form and content to Ivanhoe." (Id. ¶ 2.) Further, by signing the agreement defendants "represent[ed] and warrant[ed]" that "[a]ll documents [they] submitted . . . in connection with each loan package . . . including, but not limited to, the credit report and appraisal, . . . [were] complete, true and accurate." (Id. ¶ 5d.) Finally, defendants warranted that "[n]o fraudulent or intentionally misleading information ha[d] been provided to Ivanhoe with respect to [any] loan application . . . . including, but not limited to, the credit report and appraisal." (Id. ¶ 5f.) In short, the contract clearly creates a duty to verify appraisals, but it vests that duty in defendants, not plaintiff.

Defendants argue, however, that the duty shifted to Ivanhoe when it: (1) told defendants that its underwriters would "would verify all information [they] provided"; and (2) required them to use

an Ivanhoe-approved appraiser. (Defs.' Second Am. Answer, Affirmative Defenses & Countercl. ¶¶ 10-15, 18.) In other words, defendants say Ivanhoe voluntarily assumed the duty of verification, even if that duty would otherwise have been theirs.

Under certain circumstances, one person's voluntary action can create a duty to another. The voluntary undertaking doctrine, as it is called, "imposes liability upon one who gratuitously undertakes to render services to another and fails to perform those services with due care." Weisblatt v. Chicago Bar Ass'n, 684 N.E.2d 984, 987 (Ill. App. Ct. 1997). The doctrine applies, however, only if the voluntary undertaking caused "physical injury or damage." Id. Defendants allege that plaintiff's breach of its duty to verify caused economic damage, not physical harm. Thus, the voluntary undertaking doctrine does not apply. Id.; see Martin v. State Farm Mut. Auto. Ins. Co., 808 N.E.2d 47, 54 (Ill. App. Ct. 2004) (holding that voluntary undertaking doctrine was inapplicable when there was no allegation of "bodily injury or property damage").

Moreover, even if the voluntary undertaking doctrine did apply, defendants' negligence claim would still be barred by Moorman Mfg. Co. v. National Tank Co., 435 N.E.2d 443 (Ill. 1982). In that case, the Illinois Supreme Court held that economic loss, which is all that defendants are claiming, is generally not recoverable in tort. Id. at 450-51. Thus, defendants could not pursue their negligence claim against Ivanhoe, even if it had voluntarily assumed the duty to verify. Plaintiff's motion to dismiss Count I of the counterclaim is, therefore, granted.

In Count II of their counterclaim, defendants allege that Ivanhoe, through its appraiser-agent, fraudulently misrepresented the value of the Spicak and Ruptash properties. To state a fraudulent misrepresentation claim, plaintiff must allege that: (1) Ivanhoe made a statement of material fact that it knew or believed to be false; (2) Ivanhoe intended to induce defendants to rely on the

statement; and (3) defendants acted in reasonable reliance on the truth of the statement and were damaged. Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor, 692 N.E.2d 812, 815 (Ill. App. Ct. 1998).[2]

Ivanhoe first attacks the agency allegations. In its view, the alleged facts of this case establish that the appraiser was not its agent. The appraiser's fraud, if that is what it was, was perpetrated not only on defendants but on Ivanhoe as well. Conduct that defrauds the principal, Ivanhoe says, could not possibly be within the scope of the appraiser's employment.

Even if the appraiser's alleged fraud was within the scope of his employment, however, defendants would still falter on the last element of their claim: reasonable reliance. Any allegation of reasonable reliance is belied by the contract defendants signed, which clearly and repeatedly states that *defendants* are responsible for ensuring the accuracy of the appraisal information. (See Defs.' Second Am. Answer, Affirmative Defenses & Countercl., Ex. A, Broker/Lender Agreement ¶¶ 1e, 2, 5d, 5f.) In light of those provisions, defendants' alleged blind faith in the appraisal reports cannot constitute reasonable reliance. Consequently, plaintiff's motion to dismiss Count II of the counterclaim is granted.

## Motion to Strike Affirmative Defenses

Federal Rule of Civil Procedure ("Rule") 12(f) permits this Court to strike any insufficient affirmative defense from any pleading. Motions to strike, however, are generally disfavored and may only be granted if "the defense [asserted] is patently defective and could not succeed under any set

---

[2] Fraud claims are an exception to the Moorman economic loss doctrine. Moorman, 435 N.E.2d at 451.

of circumstances." Carpenter v. Ford Motor Co., 761 F. Supp. 62, 65 (N.D. Ill. 1991). Defendants can defeat plaintiff's motion to strike if each of their defenses: (1) is properly raised as an affirmative defense; (2) meets the pleading requirements of Rules 8 and 9; and (3) withstands a Rule 12(b)(6) challenge. Bobbit v. Victorian House, Inc., 532 F. Supp 734, 737 (N.D. Ill. 1982). With these principles in mind, we turn to the defendants' fourteen affirmative defenses.

The first affirmative defense is failure to state a claim. Whether failure to state a claim is an appropriate affirmative defense is a subject of some debate in this district. Compare, e.g., Ring v. Bd. of Educ. Cmty. Sch. Dist. No. 60, No. 03 C 7397, 2004 WL 1687009, at *3 (N.D. Ill. July 27, 2004) (failure to state a claim is properly pled as an affirmative defense) with Instituto Nacional De Comercializacion Agricola (Indeca) v. Continental Ill. Nat. Bank & Trust Co., 576 F. Supp. 985, 991 (N.D. Ill. 1983) (striking failure to state a claim affirmative defense because "a true affirmative defense raises matters outside the scope of plaintiff's prima facie case and such matter is not raised by a negative defense") (internal quotation marks and citation omitted). Because failure to state a claim is listed as a defense on Form 20 of the Appendix to the Federal Rules, a form that Rule 84 deems "sufficient under the [R]ules," we agree with defendants and the Ring court that it may properly be asserted as an affirmative defense.

To the extent the defense is asserted to Counts II and III of plaintiff's complaint, however, it must be stricken. The Court has already determined, by denying defendants' Rule 12(b)(6) motion to dismiss those claims, that they are viable. But, if the defense is asserted to Counts I or IV, the sufficiency of which have not been tested via motion to dismiss, it may stand.

In their second affirmative defense, defendants allege that plaintiff failed to mitigate its damages. Defendants do not, however, identify what mitigating measures plaintiff failed to take.

Plaintiff assumes the defense is based on its failure to verify independently the loan information, a duty the contract does not impose on them. Thus, plaintiff argues, the defense must be stricken.

To the extent the second affirmative defense is, indeed, based on plaintiff's failure to verify, it must be stricken. As discussed above, the contract lodges the verification obligation solely with defendants. Thus, plaintiff had no duty to mitigate in that fashion. To the extent the defense is based on some other acts or omissions, however, it may be viable. Therein lies the problem. Defendants have pled the second affirmative defense too generally to alert plaintiff to the conduct they challenge or to allow the Court to test its worth. Accordingly, the Court strikes the second affirmative defense, but gives defendants leave to replead it, if they can do so and remain in compliance with Rule 11.

Defendants' third affirmative defense, which is asserted only as to the contract claim, is laches. Under Florida law, which governs the contract claim, laches applies only if: (1) plaintiff, after having knowledge of defendants' conduct and an opportunity to file suit, unreasonably delayed asserting its rights; (2) defendants did not know that plaintiff would assert its rights; and (3) defendants would be prejudiced if plaintiff were allowed to do so. Winston v. Dura-Tred Corp., 268 So. 2d 426, 427 (Fla. App. Ct. 1972) (citing Van Meter v. Kelsey, 91 So. 2d 327, 331-32 (Fla. 1956)). "In determining whether delay constitutes a bar to a claim, the court must look to whether the delay has resulted in injury, embarrassment or disadvantage to any person . . . , whether the delay has been such as practically to preclude the court from arriving at a safe conclusion as to the truth of the matters in controversy, and whether, during the delay, there has occurred a change in conditions that would render it inequitable to enforce the right asserted." Brumby v. Brumby, 647 So. 2d 330, 331 (Fla. App. Ct. 1994).

Defendants allege that plaintiff waited three months after learning that the Ruptash and Spicak loan information was false to file suit against them. They also allege that the time lapse prejudiced them. They do not, however, explain how a three-month lapse, on a claim with a five-year statute of limitations, see FLA. STAT. § 95.11, prejudiced them. Absent that explanation, defendants have not adequately alleged a laches defense.

For their fourth and twelfth affirmative defenses, which defendants assert solely to the tort claims, (see Defs.' Resp. Pl.'s Mot. Strike Affirmative Defenses & Dismiss Countercl. at 13), they allege that their liability, if any, should be reduced or eliminated to the extent that third parties have contributed or caused plaintiff's damages. Defendants do not allege that *plaintiff's* actions contributed to its damages. Thus, this is not a contributory or comparative negligence defense. Rather, they say plaintiff cannot recover from them if third parties are to blame for all or part of its damages. In the context of plaintiff's fraudulent and negligent misrepresentation claims, that amounts to a denial of liability or causation, neither of which is an affirmative defense. Instituto Nacional De Comercializacion Agricola, 576 F. Supp. at 991 ("[A] true affirmative defense raises matters outside the scope of plaintiff's prima facie case and such matter is not raised by a negative defense") (internal quotation marks and citation omitted). The fourth and twelfth affirmative defenses are, therefore, stricken.

In their fifth affirmative defense, defendants allege that Ivanhoe has no standing to pursue the Illinois Consumer Fraud Act ("ICFA") claim it asserts against them. Ivanhoe can sue under the ICFA if it is a consumer, which is defined as: "[A]ny person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household." 815 ILL. COMP. STAT. 505/1e. A purchaser whose "only use

of the purchased product is as an input into the making of a product that he sells," is not a consumer within the meaning of the Act. Williams Elec. Games, Inc. v. Garrity, 366 F.3d 569, 579 (7th Cir. 2004).

The "merchandise" Ivanhoe purchased was defendants' services in finding potential borrowers. See 815 ILL. COMP. STAT. 505/1b (including services in definition of merchandise); (Fifth Affirmative Defense ¶ 2). Defendants allege that Ivanhoe used those services to make a product, a mortgage loan, which it then resold to another bank. Thus, defendants argue, Ivanhoe is not a proper plaintiff for an ICFA claim.

Recently, another mortgage broker sued by plaintiff offered this argument to Judge Moran, who rejected it:

> Defendants argue that plaintiff essentially resold the services provided by Mortgage Essentials to its customers. . . . Here, plaintiff did not incorporate Mortgage Essentials' [services] into any type of a finished product. Instead, it used a mortgage broker to help find suitable potential borrowers. Mortgage Essentials marketed these services to plaintiff and other similar lenders. Essentially, Mortgage Essentials had two groups of customers: potential borrowers who completed loan applications and potential lenders who relied on Mortgage Essentials to ensure that the information in those applications was reliable. Both groups were consumers of Mortgage Essentials' services and could therefore bring suit pursuant to the ICFA.

Ivanhoe Fin, Inc., v. Mortgage Essentials, Inc., No. 03 C 6887, 2004 WL 856591, at *2 (N.D. Ill. Apr. 21, 2004).

We respectfully disagree with that analysis. The "finished products" into which defendants' services were incorporated were the home mortgage loans on the Ruptash and Spicak properties. Those loans could not have been made without the raw materials, the applicants, provided by defendants. The analogy between products and services is not perfect, but the rationale underlying the business-consumer exception applies equally to the services context. The ICFA is intended to

protect ordinary consumers from "predators in the business world," M&W Gear Co. v. AW Dynamometer, Inc., 424 N.E.2d 356, 366 (Ill. App. Ct. 1981) (J. Webber, dissenting), not to supplement or "supplant common law breach of contract . . . cases" between businesses. Williams Elec. Games, 366 F.3d at 579 (internal quotation marks and citation omitted). According to defendants' allegations, Ivanhoe was not acting as an ordinary consumer when it purchased their services. Rather, it contracted with defendants to get the grist for its mortgage banking mill. Because Ivanhoe's alleged relationship to defendants is more akin to that of a manufacturer to a supplier than an individual consumer to a business, Ivanhoe does not fall within the ICFA's definition of consumer.

The statute does not limit standing to consumers, however. Entities that are not consumers may file suit if "the alleged conduct involves trade practices addressed to the market generally or otherwise implicates consumer protection concerns." Lake County Grading Co. v. Advance Mech. Contractors, Inc., 654 N.E.2d 1109, 1115 (Ill. App. Ct. 1995) (internal quotation marks and citation omitted). Ivanhoe contends that defendants' alleged conduct implicates consumer protection concerns because the ultimate consumers of the loans, the banks that bought them from Ivanhoe, unwittingly purchased under-secured loans.[3]

Like Ivanhoe, however, the alleged ultimate "consumers" are sophisticated entities that purchase loans in the ordinary course of business. The interests of such entities, which are fully capable of protecting themselves via contract and tort law, are not the kind the statute is designed to protect. Compare id. at 1116 (breach of construction contract between contractor and subcontractor did not implicate consumer protection concerns) with Downers Grove Volkswagen,

---

[3]Ivanhoe does not argue that defendants' alleged conduct impacts the mortgage loan market generally.

Inc. v. Wigglesworth Imports, Inc., 546 N.E.2d 33, 41 (Ill. App. Ct. 1989) (allegation that defendant published false information to consuming public about plaintiff's prices implicated consumer protection concerns); see also Credit Ins. Consultants, Inc. v. Gerling Global Reins. Corp. of Am., 210 F. Supp. 2d 980, 985 (N.D. Ill. 2002) ("While the scope of what constitutes consumer protection concerns is under debate, courts have generally required some allegations of sharp practices designed to mislead consumers about a competitor, or an implication of public health, safety or welfare issues.") Because defendants have adequately alleged that Ivanhoe does not have standing to pursue its ICFA claim, plaintiff's motion to strike the fifth affirmative defense is denied.

In their sixth affirmative defense, defendants allege that Ivanhoe is responsible for its own losses under an implied warranty theory because the defective appraisals were prepared by an Ivanhoe-approved appraiser, whom the contract required defendants to use. (Defs.' Resp. Pl.'s Mot. Strike Affirmative Defenses & Dismiss Countercl. at 14.) Ivanhoe contends that this defense is contradicted by the contract.

Once again, the Court agrees. The contract makes defendants "responsible for the accurate preparation" of property appraisals. (Defs.' Second Am. Answer, Affirmative Defenses & Countercl., Ex. A, Broker/Lender Agreement ¶ 1e.) Moreover, by signing the agreement defendants expressly warranted that "[a]ll . . . appraisal[s] . . . [were] complete, true and accurate" and that "[n]o fraudulent or intentionally misleading . . . . appraisal" had been submitted. (Id. ¶¶ 5d, 5f.) In the face of those provisions, defendants' implied warranty defense simply cannot survive.

The gist of defendants' seventh affirmative defense is that Ivanhoe cannot enforce the contract because it prevented defendants from complying with their contractual obligations. Florida law recognizes "the rule that when a person contracts for the doing of a certain thing with another,

he impliedly promises that he will not . . . do anything to hinder or obstruct the performance by the other person." Gulf Am. Land Corp. v. Wain, 166 So. 2d 763, 764 (Fla. App. Ct. 1964); FL. JUR. 2D CONTRACTS § 252 ("Prevention of performance by one party to a contract generally excuses nonperformance by the other party. The one who prevents performance cannot take advantage of his or her own wrong."). The rule does not apply, however, when "the plaintiff was not solely responsible for the nonperformance." Id. § 254.

The contract makes defendants responsible for "the accurate preparation and execution of a complete property and credit loan application package" including the appraisal on the property securing the loan. (Defs.' Second Am. Answer, Affirmative Defenses & Countercl., Ex. A, Broker/Lender Agreement ¶ 1e.) Defendants allege that plaintiff hindered or prevented them from performing that obligation by requiring them to use an untrustworthy appraiser. But defendants do not, and cannot, allege that Ivanhoe, by insisting that they choose an appraiser from an approved list, was solely responsible for their failure to complete accurate loan application packages. Had defendants verified the appraisal information they were given, as the contract required them to do, they could have fulfilled their duty, regardless of the quality of the information they were given. Because defendants cannot lay responsibility for their alleged breach solely at plaintiff's feet, their seventh affirmative defense is stricken.

In their eighth affirmative defense, defendants assert that plaintiff's unclean hands bar it from recovery. "The equitable doctrine of unclean hands precludes a party who has been guilty of misconduct amounting to fraud or bad faith connected to the subject matter of the litigation from seeking any relief from a court in equity." Wolfram P'ship, Ltd. v. LaSalle Nat. Bank, 765 N.E.2d 1012, 1024 (Ill. App. Ct. 2001). Defendants allege that plaintiff acted in a "fraudulent manner with

respect to the dispute at issue in this case," (Eighth Affirmative Defense ¶ 1), but they do not describe that fraud at all, much less with the detail required by Rules 8 and 9. Accordingly, affirmative defense eight is stricken.

For their ninth affirmative defense, defendants allege that the contract is unconscionable. Unconscionability, under Florida law, has two components, one procedural and one substantive. Fotomat Corp. v. Chanda, 464 So. 2d 626, 629 (Fla. App. Ct. 1985). A contract is substantively unconscionable if its terms are "unreasonable and unfair." Id. (internal quotation marks and citation omitted). "Procedural unconscionability . . . speaks to the individualized circumstances surrounding each contracting party at the time the contract was entered into" and includes such considerations as "age, education, intelligence, business acumen and experience [and] relative bargaining power." Id. (internal quotation marks and citation omitted). The "two elements must coalesce before a case for unconscionability is made out." Id. (internal quotation marks and citation omitted). A contract will be held unconscionable only if "no decent, fairminded person would view [it] without being possessed of a profound sense of injustice." Id. at 630 (internal quotation marks and citation omitted).

Defendants allege that the contract is unconscionable because of its lopsided risk allocation. (Ninth Affirmative Defense ¶ 1.) That allegation, however, is addressed solely to the substantive prong of the unconscionability defense. Absent allegations of procedural unconscionability, and defendants have made none, their ninth affirmative defense cannot stand.

In their tenth and eleventh affirmative defenses, defendants allege that, by funding the Ruptash and Spicak loans, plaintiff waived the contract verification provisions or is estopped from enforcing them. These defenses are inconsistent both with the contract and the governing law.

-12-

Paragraph nine of the parties' contract specifically contemplates that defendants' verification obligations survive Ivanhoe's funding of a loan: "Ivanhoe may require [defendants] to repurchase any loan [that] results from a loan application submitted by [defendants] . . . if any covenant, representation or warranty made by [defendants] is breached." (Defs.' Second Am. Answer, Affirmative Defenses & Countercl., Ex. A, Broker/Lender Agreement ¶ 9.) If, as defendants argue, Ivanhoe's funding of a loan relieves them of their obligations, that provision would be a nullity.

Moreover, waiver, under Florida law, is "[the] intentional relinquishment of a known right." FL. JUR. 2D CONTRACTS § 248 (2004). Ivanhoe could not have intentionally relinquished its right to hold defendants to their contractual obligations unless it knew, at the time it funded the loans, that the Ruptash and Spicak appraisals were inflated. Because defendants have not alleged that Ivanhoe knew about the defects before it funded the loans, they have not adequately alleged waiver.

The estoppel defense has similar problems. Because the contract assumes that defendants' obligations outlive loan funding, the act of funding does not estop Ivanhoe from enforcing the contract against defendants. Moreover, as a matter of law, Ivanhoe would be estopped from asserting its contract rights only if the act of funding caused defendants to change position to their detriment. Ennis v. Warm Mineral Springs, Inc., 203 So. 2d 514, 520 (Fla. App. Ct. 1967); FL. JUR. 2D ESTOPPEL § 27 (2004). Unless Ivanhoe's funding of the loans somehow induced defendants to change their position materially, and they have not alleged that it did, their estoppel defense must be stricken.

Affirmative defense thirteen is fraud. This defense, which is just a restatement of defendants' counterclaim for fraudulent misrepresentation, fails for the same reasons. (See supra at 4.)

Defendants' fourteenth and last affirmative defense is that the parties' contract is illusory because it is terminable at will and lacks mutuality of obligation.[4] The Florida courts deem illusory contracts "wherein one party reserves the right to cancel at his pleasure." Lauren, Inc. v. Marc & Melfa, Inc., 446 So. 2d 1138, 1139 (Fla. App. Ct. 1984) (internal quotation marks and citation omitted). That is not the case here, however. This contract permits either party to "terminate . . . at any time for any reason" upon written notice to the other party. (Defs.' Second Am. Answer, Affirmative Defenses & Countercl., Ex. A, Broker/Lender Agreement ¶ 11.) Moreover, it says, "[n]otwithstanding any such termination, this Agreement shall continue to apply with respect to any loan applications which have been locked-in, submitted or otherwise committed to Ivanhoe under this Agreement." (Id.) Thus, the contract enables either party to terminate, conditions the right upon written notice and requires the parties to perform their obligations with respect to any loan applications in process at the time of the termination. Given those conditions, the termination clause of the contract does not render it illusory. See Lauren, 446 So. 2d at 1139 (contract that allowed one party to terminate under certain conditions held not illusory).

At first blush, defendants' second objection has more merit. The contract requires defendants to sell mortgage loan packages to Ivanhoe, but requires Ivanhoe to pay defendants for those packages only if a loan is actually funded and closed. (Defs.' Second Am. Answer, Affirmative Defenses & Countercl., Ex. A, Broker/Lender Agreement, Recitals & ¶ 6.) Moreover, the contract reserves to Ivanhoe the unfettered right to reject any loan application defendants submit to it. (Id., Recitals.) In other words, defendants agreed to sell loan packages to Ivanhoe, but Ivanhoe agreed to buy only those it deemed satisfactory. Thus, it is debatable whether Ivanhoe's "promise" to buy from

---

[4]Defendants frame this issue as lack of consideration. (Fourteenth Affirmative Defense ¶ 3.)

defendants only those loan packages it deemed acceptable is actually a promise at all. Compare Office Pavilion South Fla., Inc. v. ASAL Prods., Inc., 849 So. 2d 367, 370 (Fla. App. Ct. 2003) ("Words of promise which by their terms make performance entirely optional with the 'promisor' do not constitute a promise.") (internal quotation marks and citation omitted) with Lauren, 446 So. 2d at 1139 ("A promise to buy conditioned upon the buyer's 'satisfaction' as to the goods agreed to be sold is not illusory since the buyer is at liberty to reject the goods only if he is in fact dissatisfied.") (internal quotation marks and citation omitted).

Even if the contract lacked mutuality when it was signed, however, it may still be enforceable now. According to the Florida Appellate Court:

> Although a contract is lacking in mutuality at its inception, such defect may be cured by the subsequent conduct of the parties. Want of mutuality is no defense in the case of an executed contract, and a promise lacking mutuality at its inception becomes binding on the promisor after performance by the promisee.

Wright & Seaton, Inc. v. Prescott, 420 So. 2d 623, 627 (Fla. App. Ct. 1982). To the extent Ivanhoe proves that it performed with respect to the Ruptash and Spicak loans, allegations that defendants have denied, (see Compl. ¶¶ 12, 15; Defs.' Second Am. Answer ¶¶ 12, 15), lack of mutuality will be no defense. But, if Ivanhoe is unable to do so, the defense may be valid. Ivanhoe's motion to strike this affirmative defense is, therefore, denied.

## Conclusion

For the reasons set forth above, plaintiff's combined motion to strike affirmative defenses and dismiss counterclaim is granted in part and denied in part. Defendants' counterclaim is dismissed with prejudice. Defendants' first affirmative defense is stricken with prejudice, to the

extent it is addressed to Counts II and III of the complaint. Also stricken with prejudice are defendants' fourth, sixth, seventh, twelfth and thirteenth affirmative defenses. Defendants' second, third, eighth, ninth, tenth and eleventh affirmative defenses are stricken with leave to amend. Plaintiff's motion to strike is denied with respect to the first affirmative defense, to the extent it is asserted to Counts I and IV, and the fifth and fourteenth affirmative defenses. Defendants have fourteen days from the date of this Memorandum Opinion and Order to file amended affirmative defenses in accordance with this Order, if they can do so and remain in compliance with Rule 11.

**ENTER:**

UNITED STATES DISTRICT JUDGE
PAUL E. PLUNKETT

DATED: SEP 14 2004